Filed 7/23/25  In re M.G. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re M.G., a Person Coming Under the Juvenile Court Law. | B339418 (Los Angeles County Super. Ct. No. 24CCJP01672) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>L.G., et al.,<br><br>    Defendants and Appellants. | |

APPEAL from orders of the Superior Court of the County of Los Angeles, Syna N. Dennis, Judge Pro Tempore.  Affirmed.

Donna B. Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant L.G.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant S.T.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

---

## I.  INTRODUCTION

L.G. (father) and S.T. (mother)—the parents of M.G. (the child)—appeal from the juvenile court's jurisdictional and disposition orders, arguing the court abused its discretion by issuing those orders without hearing from an Indian tribal representative who requested leave to participate in the proceeding under Welfare and Institutions Code section 306.6.[1] We affirm.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

A.  *Prior Petition Involving M.G.'s Family*

On April 3, 2020, the Department of Children and Family Services (the Department) filed a petition under section 300 on behalf of the child's two older siblings, K.G. and P.G., alleging that their parents' substance abuse endangered them.  On

---

[1]    All further statutory references are to the Welfare and Institution Code, unless otherwise indicated.

2

June 25, 2021, the juvenile court terminated the parental rights of mother and father to K.G. and P.G. under section 366.26.

On appeal from the section 366.26 order, this court conditionally reversed the order and remanded for compliance with the Indian Child Welfare Act of 1978 (ICWA; 24 U.S.C. § 1901 et seq.) and related California statutes (§ 224, et seq.). (*In re K.G.* (Feb. 18, 2022 (B315934) [non. pub. opn.].) On remand, the juvenile court again terminated jurisdiction.

B. *Current Petition on Behalf of the Child*

On May 29, 2024, the Department filed a section 300 petition on behalf of the child alleging mother and father had a recent history of methamphetamine and marijuana abuse, which resulted in the removal of the child's two older siblings, and that mother had used drugs during her pregnancy with the child.

In the detention report, a social worker advised that, following the delivery of the child on May 23, 2024, mother tested positive for fentanyl[2] and the newborn tested positive for opiates. Mother also admitted using methamphetamine and marijuana as recently as nine months prior to the child's birth and that she was not receiving any services to address her substance abuse issues. On May 26, 2024, the juvenile court issued a removal warrant for the child.

At the May 30, 2024, detention hearing, the juvenile court found the Department had made a prima facie showing that the child was a person described in section 300, placed her under the supervision of the Department, and released her to the parents

---

[2] Mother's test for fentanyl was later determined to be a "false-positive."

under several conditions, including that the child would reside with mother, the parents would submit to weekly drug and alcohol testing, and the parents would make themselves available for announced and unannounced visits by the Department.

C. *Section 385 Application*

On June 4, 2024, the Department filed an ex parte application pursuant to section 385 seeking an order detaining the child from the parents. According to the Department, prior to the detention hearing, mother and father had been evicted from the motel where they had been residing, but did not disclose that fact to the juvenile court; the adoptive mother of K.G. and P.G. reported that mother admitted using methamphetamine while pregnant with the child; and the test of the child's meconium sample taken at the hospital came back positive for methamphetamine.

During the June 5, 2024, hearing on the section 385 application, the child's counsel conceded that the Department had made a prima facie showing supporting its request to detain, but argued there was an alternative means to protect the child as mother had enrolled in an in-patient drug treatment facility that allowed the child to reside there with her. The juvenile court ordered that the child could remain placed with mother at the facility, so long as mother resided there. But the court removed the child from father with monitored visitation rights.

4

D.    *Jurisdiction/Disposition Hearing*

In a July 11, 2024, last minute information for the court, the Department reported that mother was being discharged from her in-patient drug treatment program for possessing drug paraphernalia, offering marijuana to another mother at the facility, and breaking the program's rules.

At the July 16, 2024, jurisdiction/disposition hearing, the juvenile court sustained the allegations relating to the parents' substance abuse under section 300, subdivisions (b)(1) and (2). The court removed the child from the parents and ordered reunification services for mother. The court, however, denied father any further services.

E.    *ICWA Proceedings*

The ICWA-010(A) form attached to the section 300 petition stated that a social worker asked mother and father about the child's Indian ancestry, and they informed her the child was or might be a member of or eligible for membership in the "Chickamauga Cherokee Sac and White River Bands" (the tribe) and that the child's extended family members were or might be members of the tribe. The detention report also stated that mother claimed Indian ancestry on both sides of the child's family and that family members were "part of the [tribe]." Father confirmed mother's claim of Indian ancestry, as did the maternal grandmother. And, the social worker further advised that "Chief Stephanie Jeffords reported there [was] Native American

Ancestry for the family" and that "they [were] part of the [tribe]."[3]

On May 28, 2024, the Department e-mailed notice of the detention hearing to Chief Jeffords who replied that the tribe had "'serious concerns about the events that transpired on 25 May 2024, whereby [the Department] failed to contact . . . mother's tribe, violating ICWA. Additionally, [the Department] acted rashly by reacting to a false positive test, which has now led our citizen to unnecessarily have her child taken and endure considerable stress. . . . Mother has been under tribal care and has been drug free for over 9 months. [¶] If anyone should have been called it is the Indian Health Services.'"

Chief Jeffords's e-mail attached a copy of a letter she sent to the "Pasadena Superior Court." In the letter, Chief Jeffords

---

[3] The social worker reported that, on May 26, 2024, she received a voicemail from Chief Jeffords accusing her of stealing the child; claiming the child was a member of a federally recognized tribe; asserting the social worker had violated state and federal law, including ICWA; and threatening to "'put [the social worker] in jail.'" Chief Jeffords added, "'I am getting an attorney. We're going to make sure that you suffer the consequences of your actions. . . . How dare you.'"

Later that same evening, the social worker received a text message from Chief Jeffords reiterating that the child was a member of the tribe protected under ICWA who had been taken from mother "'illegally'" and claiming that the social worker had "'endangered the health of the baby and . . . mother.'" The chief concluded by stating, "'We have worked with [mother] over the last year to improve herself. You have now undone months of work. Your actions are illegal, immoral and unethical. [¶] Who is your supervisor because I need to notify her that you are now listed as part of our [lawsuit] for violating federal law.'"

advised the court that she intended "to intervene and testify on behalf of [mother] whose baby was taken at two days old despite the hospital . . . verifying the child's health and welfare were not in danger."

At the May 30, 2024, detention hearing, mother and father submitted ICWA-020 forms stating that the child and mother were or might be eligible for membership in the tribe located in either "Oklahoma" or "Missouri and Arkansas." During the hearing, the juvenile court asked mother about Indian ancestry, and she responded, "I am Chickamauga Cherokee, and we're a federally recognized tribe. . . . [¶] I have been in contact with my Chief. I've been in contact with her every day so far." When asked about his Indian ancestry, father replied, "Same as my wife."

In response, counsel for the Department noted that, notwithstanding the claims of mother and Chief Jeffords to the contrary, the tribe was not a federally recognized; the tribe, while represented by Chief Jeffords, had moved to intervene in the prior dependency proceeding involving two of the child's older siblings, claiming the tribe was federally recognized; and the court in that proceeding found that the tribe was not federally recognized, the child's two older siblings were not Indian children, and ICWA did not apply to that proceeding.

But the Department's counsel also acknowledged that the court in the siblings' proceeding found their case to be a heritage case pursuant to section 306.6 and that it had discretion to allow the tribe to participate and provide recommendations in accordance with that statute. Finally, noting Chief Jeffords's letter to the Pasadena court in this case, the Department's counsel agreed that it could be treated as a request to participate

in the proceedings under section 306.6 and therefore could be determined either at the end of the detention hearing or at a continued hearing.

In response to counsel's arguments, the juvenile court took judicial notice of the rulings in the prior dependency proceeding and found that there was no reason to know that the child was an Indian child within the meaning of ICWA and that ICWA did not apply to the child's case.

On June 4, 2024, the Department filed a written opposition to Chief Jeffords's request to intervene pursuant to section 306.6. It argued that Chief Jeffords's prior communications with the Department and the juvenile court showed that the chief misrepresented her tribe's federally recognized status. The Department asked the court to deny the request to participate or, in the alternative, requested that any participation be limited to attending hearings and submitting informational reports.

On June 27, 2024, the juvenile court continued the scheduled hearing on the tribe's request to participate under section 306.6 to July 16, 2024, the date of the continued adjudication hearing, and ordered the Department to give notice to the tribe.

In its July 3, 2024, last minute information for the court, the Department reported that it had contacted Chief Jeffords, confirmed a mailing address for the tribe, and sent notices of the jurisdiction/disposition hearing to the address provided.[4]

At the July 16, 2024, adjudication hearing, no representative appeared on behalf of the tribe. At the beginning

---

[4] The notice sent to the tribe provided the date, time, and place of the adjudication hearing, but did not mention the hearing on the tribe's request to participate under section 306.6.

of the hearing, the juvenile court asked the Department's counsel whether there had been any updates concerning the child's ICWA status.  Counsel responded that there had been no updates, reminded the court that the matter was on calendar for a section 306.6 hearing, and represented that the tribe had been given notice.  Because no representative of the tribe had appeared for the hearing, the Department's counsel asked that the request to participate be denied.

The child's counsel acknowledged the tribe had "not participated in the last couple of hearings," but urged the juvenile court to allow the tribe's participation under section 306.6.  Counsel also noted that ICWA did not apply.

Mother's counsel joined in the arguments of the child's counsel and emphasized that mother wanted the tribe "to be able to have a seat at the table in this case", adding that "the more support a child has the better off they are."

After hearing the arguments of counsel, the juvenile court explained: "I have . . . no objection to the tribe's participation, per se.  However, I am informed that they received notice, and they chose not to show up.  So it would seem to me the tribe has already made its decision about whether or not it chooses to participate in this matter.  [¶]  So on that basis, I would be inclined to grant the Department's motion and not allow participation from the tribe."  After further consideration, however, the court decided to allow the tribe to participate, reasoning: "Since [the child's] counsel and mother's counsel want the tribe to participate, I'll allow the participation, but it will be limited to attending hearings only, and they will get notice.  And if they show up, they show up.  But they got notice of this hearing, and they didn't show up.  [¶]  . . . So let's go on to the

9

adjudication. I'll restate the prior ICWA findings there's no reason to know that the child is an Indian child within the meaning of ICWA, and the court finds that ICWA does not apply."

On July 17, 2024, father and mother filed notices of appeal from the juvenile court's findings and orders made at the jurisdiction/disposition hearing.

## III. DISCUSSION

Mother and father[5] contend that the juvenile court abused its discretion when it denied the tribe the opportunity to participate in the jurisdiction/disposition hearing. According to the parents, "[t]he juvenile court's stated reason for denying the motion—the tribe's absence from the hearing—was unsound given that notice for the hearing was materially defective. This necessarily means the action transgressed the confines of the applicable legal principles—principles intended to assist the court in determining the child's best interest."

A.  *Legal Principles*

"In any given case, ICWA applies or not depending on whether the child who is the subject of the custody proceeding is an Indian child." (*In re Abbigail A.* (2016) 1 Cal.5th 83, 90.) Only federally recognized Indian children and tribes are entitled to the

---

[5]     Father joins in mother's arguments concerning the juvenile court's abuse of discretion without making any separate arguments.

protections of ICWA; "non-federally recognized tribes . . . have no rights under ICWA . . . ." (*Id*. at p. 94.)

In California, the Legislature enacted section 306.6[6] which gives juvenile courts the discretion to allow non-federally

---

[6]     Section 306.6 provides, in pertinent part: "(a)  In a dependency proceeding involving a child who would otherwise be an Indian child, based on the definition contained in subdivision (b) of Section 224.1, but is not an Indian child based on the child's Indian tribe not having federal recognition, as described by paragraph (4) of subdivision (a) of Section 224.1, the court may permit the tribe from which the child is descended to participate in the proceeding upon request of the tribe.

"(b)  If the court permits a tribe to participate in a proceeding, the tribe may do all of the following, upon consent of the court:  [¶]  (1) Be present at the hearing or appear remotely as authorized by subdivision (l) of Section 224.2.  [¶]  **(**2) Address the court.  [¶]  (3) Request and receive notice of hearings.  [¶] (4) Request to examine court documents relating to the proceeding.  [¶]  (5) Present information to the court that is relevant to the proceeding.  [¶]  (6) Submit written reports and recommendations to the court.  [¶]  (7) Perform other duties and responsibilities as requested or approved by the court.

[¶]  . . .  [¶]

"(d)  This section is intended to assist the court in making decisions that are in the best interest of the child by permitting a tribe in the circumstances set out in subdivision (a) to inform the court and parties to the proceeding about placement options for the child within the child's extended family or the tribal community, services and programs available to the child and the child's parents as Indians, and other unique interests the child or the child's parents may have as Indians.  This section shall not be construed to make [ICWA], or any state law implementing [ICWA], applicable to the proceedings, or to limit the court's

11

recognized tribes to participate in cases involving children who would be Indian children but for the unrecognized status of their tribe.  (§ 306.6, subd. (a); *In re Abbigail A., supra*, 1 Cal.5th at p. 94.)  The decision to allow such participation is made upon a case-by-case basis.  (§ 306.6, subd. (e).)

If the juvenile court decides to allow an unrecognized tribe to participate in a dependency proceeding, section 306.6 limits such participation to receiving notice of hearings upon request, being present at hearings and addressing the court, examining court documents, providing information to the court, including the submission of reports and recommendations, and performing such duties and responsibilities as requested by the court.  (*Id.*, subd. (b).)

We review a juvenile court's ruling on an unrecognized tribe's request to participate in a dependency proceeding under section 306.6 for abuse of discretion.  (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1005, cited with approval, but disapproved on other grounds in *In re Dezi C.* (2024) 16 Cal.5th 1112, 1141, 1152, fn. 18.)  "''The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more

---

discretion to permit other interested persons to participate in these or any other proceedings.

"(e) The court shall, on a case-by-case basis, make a determination if this section is applicable and may request information from the tribe, or the entity claiming to be a tribe, from which the child is descended for the purposes of making this determination, if the child would otherwise be an Indian child pursuant to subdivision (a).

12

inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for

that of the trial court."'" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319.)

B.    *Analysis*

The parents contend the trial court abused its discretion in limiting the tribe's participation in these proceedings. In their view, "[g]iven the family's close connection to [the tribe] and the tribe's earlier effort to assist mother, granting the tribe the right to present information to the court was the only decision consistent with the purpose of section 306.6."

We will assume for sake of argument that Chief Jeffords's letter to the Pasadena court asserting the tribe's right to intervene under ICWA, as a federally recognized tribe, constituted a request, under section 306.6, to participate in the child's case as an unrecognized tribe. We nonetheless find no abuse of discretion. Here, even after receiving notice that the court would be conducting an adjudication hearing on July 16, 2024, the tribe did not appear at that hearing. Further, Chief Jeffords threatened to jail the social worker for seeking to remove the child from mother and expressed an interest in intervening "on behalf of [mother]." On this record, the court could have reasonably concluded that the best interests of the child—rather than mother—supported an order limiting the tribe's participation to receiving notice of the hearings and appearing at them.

The parents next contend that the notice provided to Chief Jeffords was inadequate because it provided only that "there would be an 'Adjudication Hearing,' with no mention of the motion to intervene or section 306.6." We disagree. "Section

14

306.6 permits the court in a dependency action to allow a tribe which is not federally recognized to appear in the proceeding and present information to the court. [Fn. omitted]." (*In re A.C.* (2007) 155 Cal.App.4th 282, 287.) By its terms, the statute does not require that any notice the court decides to provide to the tribe include a reference to a section 306.6 hearing. (See *ibid.*)[7]

---

[7] The parents, in their opening briefs, contended that the Department provided defective notice to the tribe when it sent a written notice of the July 16, 2024, because the tribe "was being represented by California attorney, Mark Vezzola" yet the Department failed to provide him with notice. In their reply briefs, the parents conceded that they had made an error in their opening brief in that the tribe was not represented by counsel in these proceedings.

## IV.   DISPOSITION

The jurisdiction and disposition orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

BAKER, Acting P. J.

MOOR, J.